UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

LUCHO HUNTE and ANTHONY SMITH,

                              Plaintiffs,

                 -against-

CITY OF NEW YORK, Police Officer JAMES ELLERBE, Shield No. 2184, NYPD Detective WARREN ROHAN, Tax No. 926018, individually, NYPD Sergeant ROBERT MALONEY, Tax. No. 930640, individually, and John/Jane Doe Officers 1-8, individually,

                             Defendants.
------------------------------------------------------------------- x

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

16cv188 (JBW) (LB)

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff Lucho Hunte's ("Mr. Hunte") and Plaintiff Anthony Smith's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

3.    This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District in Kings County.

## JURY DEMAND

5. Plaintiffs demand a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6. Plaintiffs live in Kings County.

7. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9. Defendant NYPD Police Officer James Ellerbe, Shield No. 3184, Defendant NYPD Detective Warren Rohan, Tax No. 926018, NYPD Sergeant Robert Maloney, Tax No. 930640, and Defendants John/Jane Doe Officers 1-8, at all times relevant herein, were duly sworn officers, employees and agents of the NYPD and were acting under the supervision of said department and according to their

official duties. Ellerbe, Rohan, Maloney and John/Jane Does 1-8 are sued in their individual capacities.

10. That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11. Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

12. In or around April 2013, Plaintiffs were working for a cleaning company along with a man named Michael Kent. On information and belief, Mr. Kent's father was the owner or manager of the cleaning company. The company held contracts with, inter alia, law firms, doctor's offices and stores.

13. On April 27, 2013, Mr. Kent and Plaintiffs car pooled to a cleaning site to perform their work.

14. Mr. Kent drove the vehicle, Plaintiff Mr. Hunte was in the vehicle's front passenger seat and Plaintiff Mr. Smith sat in the back.

15. Plaintiff Mr. Smith asked if Mr. Kent could stop at a pharmacy because

he wanted to fill a prescription.

16. Mr. Kent agreed and at approximately noon he parked the vehicle at a pharmacy on the corner of Franklin and St. Marks in Brooklyn, New York. Plaintiff Mr. Smith initially entered Swan Pharmacy (which has since closed) located at 650 Franklin Avenue (the "First Pharmacy"). Eve & Mike Pharmacy was across the street at 552 St. Marks Avenue (the "Second Pharmacy").

17. Plaintiff Mr. Smith entered the First Pharmacy and Mr. Kent and Plaintiff Mr. Hunte waited for Plaintiff Mr. Smith in the vehicle.

18. The First Pharmacy did not have the medication that Plaintiff Mr. Smith needed in stock. Plaintiff Mr. Smith left the First Pharmacy, crossed the street and entered the Second Pharmacy where he stood in line waiting his turn.

19. On information and belief, Individual Defendants, at least some of whom worked for the NYPD's Narcotics Division, were surveilling the scene because they suspected that narcotics sales would take place on the corner of Franklin and St. Marks.

20. As Plaintiff Mr. Smith waited inside the Second Pharmacy for his turn, Individual Defendants approached Mr. Kent's vehicle, which remained parked near the First Pharmacy. Individual Defendants had no cause or suspicion to justify their initial approach of the vehicle or ensuing actions.

21. The first of the Individual Defendants to arrive were three male

plainclothes detectives.

22. On information and belief, and as well as Plaintiff Mr. Hunte can recollect, these Individual Defendants pulled up in a burgundy or similarly-dark-hued SUV or small truck/van.

23. Of the three plainclothes male Individual Defendants who got out of that vehicle, one was white, one was black, and one had light skin but Plaintiffs do not venture to guess that third Individual Defendant's race.

24. On information and belief, Defendant Ellerbe was one of these three first Individual Defendants ("the First Three Individual Defendants").

25. On information and belief, Defendant Rohan and Defendant Maloney were the other two Individual Defendants.

26. The First Three Individual Defendants unreasonably ordered Mr. Kent and Plaintiff Mr. Hunte out of the vehicle and the First Three Individual Defendants unreasonably searched Mr. Kent and Plaintiff Mr. Hunte.

27. At about this time a second (and possibly a third, although Plaintiffs cannot recall) police vehicle arrived on the scene. In addition, a "paddywagon" arrived on the scene.

28. Additional John/Jane Doe Defendants drove these vehicles.

29. On information and belief, there may have been one or two other plainclothes detectives who arrived. The majority of the second and third wave

arrivals on the scene, however, were uniformed NYPD officers. On information and belief, and as Plaintiffs can best recollect, all Doe Defendants on the scene were male.

30. As Individual Defendants were searching Plaintiff Mr. Hunte and Mr. Kent, Plaintiff Mr. Smith turned around while in line at the Second Pharmacy and saw what was happening.

31. Plaintiff Mr. Smith saw Individual Defendants "interacting" with Plaintiff Mr. Hunte and Mr. Kent.

32. Plaintiff Mr. Smith left the Second Pharmacy and voluntarily returned to where Plaintiff Mr. Hunte and Mr. Kent were with Individual Defendants.

33. Individual Defendants unlawfully seized and searched Plaintiff Mr. Smith as well.

34. Individual Defendants found nothing unlawful.

35. Individual Defendants handcuffed and arrested Plaintiffs and Mr. Kent.

36. Defendants put the handcuffs on Mr. Hunte's wrists too tightly, cutting off the flow of blood and causing him discomfort, discoloration and pain.

37. As a result of the handcuffs being snapped too tightly upon Mr. Hunte's wrists, Mr. Hunte suffered swelling, discoloration of the skin and flesh and visible marks indicating abrasion and chafing on his wrists for a number of days after the incident.

38. Defendants took Plaintiffs and Mr. Kent to the precinct then Central

Booking.

39. In the event that Defendant Maloney was not actually on the scene, Defendant Maloney was responsible for supervising Defendant Ellerbe and Defendant Rohan once they reported the arrests, which involved making an independent inquiry to satisfy himself that Defendant Ellerbe's and Defendant Rohan's arrests of Plaintiffs were founded on evidence which reasonably provided probable cause to believe that Plaintiffs committed a crime. In light of the lack of physical evidence in this case (even though Defendant Ellerbe and Defendant Rohan claimed to have recovered it), and in light of the existence of a lawful prescription on Plaintiff Mr. Smith's person (which Defendant Ellerbe and Defendant Rohan did not consider even after Plaintiff Mr. Smith told them about it, to the point that Plaintiff Mr. Smith still had his lawful prescription in his pocket to present to a state judge when he was arraigned the next day), Defendant Maloney failed to intervene to at least mitigate Defendant Ellerbe's and Defendant Rohan's acts.

40. On the basis of Defendant Ellerbe's false statement to D.A.'s Office staff, Plaintiff Mr. Hunte was charged with Mr. Kent on one Criminal Complaint alleging that Defendant Ellerbe witnessed the two men in Mr. Kent's vehicle passing blank and forged prescriptions back and forth between them. This was not true.

41. On the basis of Defendant Ellerbe's false statement to D.A.'s Office staff, Plaintiff Mr. Smith was charged on a separate Criminal Complaint. Defendant

Ellerbe falsely told the D.A.'s Office that he found a single, solitary oxycodone pill in Plaintiff Mr. Smith's jacket pocket inside a pill bottle without a label. This was not true. In fact, Plaintiff Mr. Smith had no medication on his person. Plaintiff Mr. Smith did have on his person a fully and lawfully completed prescription for medication written by his doctor as well as that doctor's card.

42. Plaintiff Mr. Hunte and Plaintiff Mr. Smith were incarcerated a number of days before they were released. In Plaintiff Mr. Hunte's case, he was sent to Rikers Island before being released.

43. Prior to arraignment, Plaintiff Mr. Smith was held in a bullpen at the precinct such that all of his personal property was not vouchered. As a consequence, when he appeared before the state court for arraignment, Plaintiff Mr. Smith was able to pass his prescription and doctor's card to the judge, who commented that the allegation about the single pill seemed dubious in light of Plaintiff Mr. Smith's version of events and ability to produce the unfilled and lawfully written prescription at the moment of his arrest.

44. As a consequence of the false and malicious prosecution, Plaintiff Mr. Hunte and Plaintiff Mr. Smith were unable to work a number of shifts at the cleaning company and lost wages.

45. The state court later dismissed the charges against Plaintiffs and Mr. Kent on the prosecutor's motion because the government did not have evidence

sufficient to prove the case and sealed the charges.

46. Plaintiffs suffered damages as a result of Defendants' actions, including but not limited to: deprivation of liberty, lost wages, reputational damages, emotional trauma, criminal defense attorney's fees and more.

47. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

48. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's IAB and the CCRB) that many NYPD officers, including the Defendants,

arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

49. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009).

50. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," which permits an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

51. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective

action. This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

52. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

53. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

54. All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

55. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

56. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

57. As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## **FIRST CLAIM**
## **42 U.S.C. Section 1983**

58. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

59. Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

60. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

61. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

62. Plaintiffs repeat and reallege each of the allegations set forth in this complaint with the same force and effect as if fully set forth herein.

63. Defendants, by their conduct toward Plaintiffs alleged herein, subjected Plaintiffs to false arrest and thus violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

64. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

65. Defendants did not have probable cause to believe that Plaintiffs committed any crime yet confined him for a crime which Defendants knew Plaintiffs did not commit.

## THIRD CLAIM
## MALICIOUS PROSECUTION

66. Plaintiffs repeat and reallege each of the allegations set forth in this complaint with the same force and effect as if fully set forth herein.

67. Defendants, by their conduct toward Plaintiffs alleged herein, subjected Plaintiffs to malicious prosecution and thus violated Plaintiffs' rights guaranteed by 42

U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

68. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

69. Defendants did not have probable cause to believe that Plaintiffs committed any crime yet Defendants commenced and continued a prosecution against Plaintiffs for a crime which Defendants knew he did not commit, and which prosecution terminated in Plaintiffs' favor.

## FOURTH AND FIFTH CLAIMS
## FABRICATION OF EVIDENCE AND DEPRIVATION OF THE RIGHT TO A FAIR TRIAL

70. Plaintiffs repeat and reallege each of the allegations set forth in this complaint with the same force and effect as if fully set forth herein.

71. Defendants, by their conduct toward Plaintiffs alleged herein, fabricated evidence against Plaintiffs knowing that the evidence in question would likely influence a jury. This evidence fabrication corrupted Plaintiffs' fair trial rights as guaranteed by 42 U.S.C. § 1983, the Sixth and Fourteenth Amendments to the Constitution of the United States.

72. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to

14

deprive Plaintiffs of their constitutional rights. Defendants did not have probable cause to believe that Plaintiffs committed any crime

## SIXTH CLAIM
## FAILURE TO INTERVENE

73. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

74. Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

75. Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

76. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

77. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
## MONELL CLAIM

78. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

79. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

80. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

81. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

82. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

83. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth and Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

E. Such further relief as this Court deems just and proper.

DATED:   April 27, 2016
         New York, New York

                                  _____/s_____
                                  Ryan Lozar
                                  305 Broadway, 9th Floor
                                  New York, New York 10007
                                  (310) 867-1562
                                  ryanlozar@gmail.com

                                  *Attorney for Plaintiffs*